IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| REHABCARE GROUP EAST, INC. d/b/a REHABCARE GROUP THERAPY SERVICES, INC., <br><br> Plaintiff, <br><br> v. <br><br> SAK MANAGEMENT SERVICES, LLC, COVENTRY LIVING CENTER, LLC, PARKVIEW TERRACE, LLC, ST. ANTHONY'S NURSING & REHABILITATION CENTER, LLC, and WALNUT GROVE VILLAGE, LLC, <br><br> Defendants. | No. 09 C 4523 <br><br> Judge Joan H. Lefkow |

**OPINION AND ORDER**

RehabCare Group East Inc. ("RehabCare") filed a five-count amended complaint against SAK Management Services, LLC ("SAK"), Coventry Living Center, LLC ("Coventry"), Parkview Terrace, LLC ("Parkview"), St. Anthony's Nursing and Rehabilitation Center ("St. Anthony's") and Walnut Grove Village, LLC ("Walnut Grove"),[1] arising out of their alleged failure to pay money due to RehabCare for services it provided. All defendants except for SAK have answered the complaint, and SAK now moves to dismiss all claims against it—promissory estoppel (Count II), unjust enrichment (Count III), account stated (Count IV), and tortious interference with contracts (Count V)—pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the motion [#39] is denied.

---

[1] The court has jurisdiction pursuant to 28 USC § 1332(a)(1). RehabCare is a Delaware corporation with its principal place of business in Missouri. All of the defendants' principal places of business are in Illinois, and none of their members is a citizen of Delaware or Missouri.

1

**BACKGROUND**

RehabCare is a provider of therapy services. Am. Compl. ¶ 2. It allegedly contracted with Coventry, St. Anthony's, Parkview and Walnut Grove (the "Facility Defendants") to provide therapy services to their patients. *Id.* ¶ 12. Though RehabCare allegedly performed all obligations required of it by contract, *id.* ¶ 13, it alleges that it was never compensated for its services. *Id.* ¶ 15. Despite numerous requests, *id.* ¶ 16, statements of account supplied to the defendants, *id.* ¶ 47, and meetings in which RehabCare was promised by the defendants that the outstanding balance would be paid, *id.* ¶¶ 16–17, the payments have allegedly not yet been made. This is despite the Facility Defendants' allegedly being reimbursed by Medicare for "all or a significant portion of the services provided by RehabCare." *Id.* ¶ 21.

During the period in question, SAK allegedly managed the Facility Defendants' hospitals. *Id.* ¶ 22. SAK is alleged to have known about the agreements between the Facility Defendants and RehabCare, and to have used its position and influence to encourage the Facility Defendants to breach their contract with RehabCare and divert funds to SAK's sole benefit. *Id.* Further, the actual relationship between SAK and the Facility Defendants is alleged to have been much closer than SAK's role as manager might suggest. Specifically, SAK is alleged to have (1) directed the payment of insider debts, including to SAK and one another, before third-party creditors, (2) commingled funds, (3) shared other assets without a corresponding exchange of value, (4) intentionally undercapitalized the business in which they were engaged, (5) leveraged unprofitable locations to ensure that the more profitable locations remained profitable and available to provide funds to SAK and other insiders, and (6) used the Facility Defendants as business conduits for SAK and other insiders. *Id.* ¶ 23.

**LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) challenges a complaint for failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6); *General Elec. Capital Corp.* v. *Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). In ruling on a Rule 12(b)(6) motion, the court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Dixon* v. *Page*, 291 F.3d 485, 486 (7th Cir. 2002). In order to survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of the claim's basis, but must also state facts which establish that the requested relief is plausible, and not just possible, on its face. *Ashcroft* v. *Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009); *see also Bell Atl.* v. *Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

**DISCUSSION**

**I.    Promissory Estoppel (Count II)**

SAK argues that Count II must be dismissed because (1) RehabCare has failed to allege the existence of a specific promise, and (2) promissory estoppel may not be invoked where a written contract—in this case the contract between the Facility Defendants and RehabCare—controls the transaction. The first argument is untenable: the complaint states that the defendants[2] promised that the payments would be made. Thus, RehabCare pleaded facts showing the existence and the contents of the promise. This allows the court to infer a right to recovery under promissory estoppel provided the remaining elements of the claim are met. Thus, the claim is plausible, not just possible, and Rule 8(a) of the Federal Rules of Civil Procedure is satisfied. *Iqbal*, 129 S. Ct. at 1949.

---

[2] Since this allegation must be read in the light most favorable to the non-moving party, the court assumes that by "defendants" RehabCare was not restricting its argument to simply the Facility Defendants but meant to include SAK.

SAK's second argument is no better. Undoubtedly, "once consideration is found to exist, *a party to the contract* can no longer maintain an action for promissory estoppel where the performance which is said to satisfy the requirement of detrimental reliance is the same performance that supplies the consideration for the contract." *Prentice* v. *UDC Advisory Servs., Inc.*, 648 N.E.2d 146, 151, 271 Ill. App. 3d 505, 207 Ill. Dec. 690 (1995) (emphasis added); *see also The Sharrow Group* v. *Zausa Dev. Corp.*, No. 04 C 6379, 2004 WL 2806193, at *3 (N.D. Ill. Dec. 6, 2004) ("Under Illinois law, promissory estoppel and unjust enrichment are unavailable where the parties have entered into an express contract." (citing cases)).

But SAK was not a party to the written contract at issue—the contract existed only between the Facility Defendants and RehabCare. SAK claims that this is irrelevant, because once it has been established that there is a contract controlling the transaction, *no one* can be held liable under promissory estoppel for a promise to perform the terms of that contract. The court finds no legal support for this assertion. *See DeGeer* v. *Gillis*, No. 09 C 6974, 2010 WL 1609914, at *9 (N.D. Ill. April 21, 2010) ("The doctrine of promissory estoppel generally does not apply where a contract exists *between the parties*." (emphasis added)). All cases cited by SAK indicate only that promissory estoppel is barred when there is a contract *between the parties. See, e.g.*, *The Sharrow Group*, 2004 WL 2806193, at *3 ("'As a rule, plaintiffs cannot pursue quasi-contractual claims where there is an express contract between the parties.'" (quoting *Prodromos* v. *Poulos,* 560 N.E.2d 942, 948, 202 Ill. App. 3d 1024, 148 Ill. Dec. 345 (1990))).

It is unclear whether SAK is arguing that it was in fact a party to the contract or acting on behalf of one[3]—perhaps due to its role as an agent of the Facility Defendants. It is important to

---

[3] The latter is unlikely, however, since SAK seems to acknowledge in its reply brief that it was *not* a party to the contract and does nothing to argue that it was acting on behalf of one.

4

emphasize, however, that SAK bears the burden of proving the legal insufficiency of the claim. *Fedders Corp.* v. *Elite Classics*, 279 F. Supp. 2d 965, 973 (S.D. Ill. 2003). SAK does not cite a single case to defend this argument, and the closest it comes to actually arguing the point is the assertion that there can be no promissory estoppel where the promisee is obligated to perform under a written contract. If it was SAK's intention to make this argument, then these allegations are the sort of "perfunctory and undeveloped assertion[s]" that courts are not obligated to entertain as legal arguments. *United States* v. *Hook*, 195 F.3d 299, 310 (7th Cir. 1999) ("[I]t is not the obligation of this court to research and construct the legal arguments open to parties, especially when they are represented by counsel. In order to develop a legal argument effectively, the facts at issue must be bolstered by relevant legal authority; a perfunctory and undeveloped assertion is inadequate . . . ." (citations omitted) (internal quotation marks omitted)). With that said, the court finds no basis for dismissing Count II, and the motion to dismiss Count II will be denied.

## II.    Unjust Enrichment (Count III)

"To state a cause of action based on a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care Servs., Inc.* v. *Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679, 131 Ill. 2d 145, 137 Ill. Dec. 19 (1989) (citations omitted).

SAK's first argument is that RehabCare's claim for unjust enrichment is barred because there was a contract governing RehabCare's provision of its services. Again, however, the court finds no support in the case law to suggest that this is true for those who are not parties to the

5

contract.[4] *See Greenpoint Mortgage Funding, Inc.* v. *Family First Mortgage, Inc.*, No. 05 C 4498, 2007 WL 2608554, at *3 (N.D. Ill. Sept. 4, 2007) ("All of the cases cited by [defendant] involve contracts between the plaintiff and the party against whom an unjust enrichment claim is stated. Absent any alleged contractual relationship between [plaintiff] and [defendant], [defendant] is not entitled to dismissal of [plaintiff's] unjust enrichment claims." (citations omitted)); *People ex rel. Hartigan* v. *E & E Hauling, Inc.*, 607 N.E.2d 165, 177, 153 Ill. 2d 473, 180 Ill. Dec. 271 (1992) ("Because unjust enrichment is based on an implied contract, 'where there is a specific contract which governs *the relationship of the parties*, the doctrine of unjust enrichment has no application.'" (quoting *La Throp* v. *Bell Fed. Sav. & Loan Ass'n*, 370 N.E.2d 188, 195, 68 Ill. 2d 375, 12 Ill. Dec. 565 (1977)) (emphasis added)); *Mid-West Energy Consultants, Inc.* v. *Covenant Home, Inc.*, 815 N.E.2d 911, 917, 352 Ill. App. 3d 160, 287 Ill. Dec. 267 (2004) ("When a contract exists *between the parties*, no quasi-contractual claim, such as *quantum meruit*, can arise." (emphasis added) (citations omitted)). SAK cites no cases suggesting otherwise. Because SAK was not a party to the contract between the Facility Defendants and RehabCare—the contract it alleges bars this suit—this argument fails.[5]

SAK next argues that RehabCare has failed to allege a single fact that supports an inference that SAK was unjustly enriched by RehabCare's services. Here, RehabCare's allegations are that SAK was enriched by a third-party—Medicare. In these cases, there are

---

[4] In fact, SAK cites to a case from Michigan in an attempt to show that where there is a contract, there is no claim for unjust enrichment. SAK omits, however, a crucial portion of the text that militates against its argument, which is contained in the paragraph immediately following the cited portion: "However, defendant was not a party to any of these express contracts. Therefore, the contracts did not exist *between the same parties*. Because there were no express contracts *between the same parties* on the same subject matter, defendant's argument with respect to this issue must fail. The mere existence of the express contracts between plaintiffs and [a third-party] does not bar recovery from defendant in quantum meruit." *Morris Pumps* v. *Centerline Piping, Inc.*, 729 N.W.2d 898, 904 (Mich. Ct. App. 2006).

[5] Again, the court notes that it is unclear whether SAK wishes to argue that it was in fact a party to the contract or acting on behalf of one. To the extent that it makes this contention the court reiterates its concerns from the previous section and refuses to entertain the argument.

three ways in which the plaintiff may show unjust enrichment: "(1) the benefit should have been given to the plaintiff, but the third party mistakenly gave it to the defendant instead, (2) the defendant procured the benefit from the third party through some type of wrongful conduct, or (3) the plaintiff for some other reason had a better claim to the benefit than the defendant." *HPI*, 545 N.E.2d at 679 (citations omitted). RehabCare is pursuing a claim along the third route. It contends it has a superior claim to the Medicare funds pursuant to the Medicare Claims Processing Manual (attached to the complaint as Exhibit 1) and its contractual arrangement with the Facility Defendants.

To argue that no facts are advanced in support of this theory is far too extreme. The complaint alleges that the defendants have received payments from Medicare, that these funds have—contrary to RehabCare's contract—not been paid to RehabCare, and that SAK used its influence to divert these funds owed to RehabCare for its own benefit. Am. Compl. ¶¶ 21–22, 39–41. These allegations are not as specific as they could be, but assumed true, they allow the court to infer that SAK was unjustly enriched by funds over which RehabCare has a superior claim, and so a claim for unjust enrichment will lie (provided the other elements—which SAK does not challenge here—are satisfied). This is the very definition of a plausible claim, *Iqbal*, 129 S. Ct. at 1949 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."), and so dismissal is inappropriate.

Lending further support to RehabCare's argument is the fact that RehabCare's claim for unjust enrichment here is nearly identical in terms of circumstances to those in a prior suit involving RehabCare—*RehabCare Group E., Inc.* v. *Certified Health Mgmt. Inc.*, No. 07 C 2923, 2007 WL 3334500, at *4 (N.D. Ill. Nov. 8, 2007). There, the defendant—a hospital

7

management company just like SAK—had its motion to dismiss a claim of unjust enrichment denied, since RehabCare's allegations that the defendant retained Medicare payments was sufficient to support such a claim. *Id.* In conclusion, RehabCare has properly pleaded this element of unjust enrichment. SAK makes no more arguments for dismissing this count, and the motion to dismiss Count III will be denied.

**III.    Account Stated (Count IV)**

"An 'account stated' determines the amount of a preexisting debt when parties who previously have conducted monetary transactions agree that there truly is an account representing the transactions between them." *Delta Consulting Group, Inc.* v. *R. Randle Constr., Inc.*, 554 F.3d 1133, 1137 (7th Cir. 2009) (citing *Protestant Hosp. Builders Club, Inc.* v. *Goedde*, 424 N.E.2d 1302, 1306, 98 Ill. App. 3d 1028, 54 Ill. Dec. 399 (1981)). An account stated, however, is not an instrument to create original liability, but rather a method of proving damages for breach of a promise to pay a contract. *U.S. Neurosurgical, Inc.* v. *City of Chi.*, 572 F.3d 325, 333 (7th Cir. 2009); *Dreyer Med. Clinic, S.C.* v. *Corral*, 591 N.E.2d 111, 114, 227 Ill. App. 3d 221, 169 Ill. Dec. 231 (1992) ("An account stated only determines the amount of the debt where a liability exists, and cannot be made to create a liability *per se* where none before existed." (citations omitted) (internal quotation marks omitted)).

SAK argues that RehabCare's pleadings fail to allege any pre-existing liability and that the only way SAK could have accepted any invoices was in its capacity as manager. Thus, according to SAK, it did not acknowledge any pre-existing debt to RehabCare, and an account stated theory must fail. RehabCare responds that it does not seek to recover against SAK for an account stated as a direct claim. Rather, it maintains that SAK should be held jointly and

severally liable for the Facility Defendants' obligations for any damages it recovers on this claim.

RehabCare invokes the "alter ego theory" to allege that SAK must be liable for the obligations owed by the Facility Defendants.

> Under the law of Illinois, a party seeking to disregard the corporate entity because the targeted corporation is merely the alter ego of the dominating personality "must show that (1) there is such a unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist; and (2) circumstances are such that adhering to the fiction of a separate corporate existence would promote *injustice or inequity*."

*Int'l Fin. Servs. Corp.* v. *Chromas Techs. Can., Inc.*, 356 F.3d 731, 736 (7th Cir. 2004) (quoting *Melko* v. *Dionisio*, 580 N.E.2d 586, 594, 219 Ill. App. 3d 1048, 162 Ill. Dec. 623 (1991)). RehabCare asks the court to "pierce the corporate veil," and in doing so find that SAK is "so intertwined with" the Facilities Defendants that it should be held responsible for their obligations. *RehabCare*, 2007 WL 3334500, at *1.

The alter ego theory is not a claim but a procedural mechanism for allowing liability on a substantive claim. *Int'l Fin. Servs.*, 356 F.3d at 736. The power to utilize this procedural mechanism—to pierce the corporate veil—is an equitable and discretionary one reserved for the court. *Id.* at 737. RehabCare need not *prove* at this stage that the veil can be pierced—it must satisfy only the notice pleading standards of Fed R. Civ. P. 8(a).[6] *Flentye* v. *Kathrein*, 485 F. Supp. 2d 903, 913 (N.D. Ill. 2007) ("To state a veil-piercing claim, Plaintiffs typically are only required to satisfy the notice pleading standards of Rule 8(a)." (citing *Kellers Sys., Inc.* v.

---

[6] There are exceptions to this—for instance, where the court is asked to pierce the corporate veil to establish liability for a claim of fraud. *See, e.g.*, *New Freedom Mortgage Corp.* v. *C & R Mortgage Corp.*, No. 03 C 3027, 2004 WL 783206, at *8 (N.D. Ill. Jan. 15, 2004) (citing *Typographics Plus, Inc.* v. *I.M. Estrada & Co.*, No. 98 C 886, 2000 WL 1006572, at *3–4 (N.D. Ill. July 19, 2000)). Nevertheless, none of the counts here is for a claim of fraud, nor do the averments supporting the alter ego theory sound in fraud, as they are not based upon allegedly fraudulent conduct. *See Borsellino* v. *Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (citing *Rombach* v. *Chang*, 355 F.3d 164, 170–71 (2d Cir. 2004)). Therefore, the court finds no reason to require the heightened standards of Rule 9(b) here.

*Transp. Int'l Pool, Inc.*, 172 F. Supp. 2d 992, 1000–01 (N.D. Ill. 2001))); *see also Wachovia Sec., LLC* v. *Neuhauser*, No. 04 C 3082, 2004 WL 2526390, at *11 (N.D. Ill. Nov. 05, 2004).

SAK argues that RehabCare has not stated a single fact upon which the alter ego theory can be based, but rather has stated the "threadbare legal elements" of the doctrine.[7] RehabCare's pleadings, however, contain several averments indicating the appropriateness of the alter ego doctrine. These include (1) the payment of SAK and third party creditors with funds owed to RehabCare, (2) the commingling of funds, (3) the sharing of assets, (4) intentional undercapitalization of the business in which SAK was engaged, (5) the leveraging of unprofitable locations to maintain the profitability of successful locations and provide funds to SAK and others, and (6) using the Facility Defendants as a business conduit for SAK and others. Am. Compl. ¶¶ 23–24.

"Where a claimant fairly alleges an entity exists as the alter ego of another and provides factual manifestations suggesting the existence that the two operate as a single entity, a motion to dismiss must be denied." *Kellers Sys.*, 172 F. Supp. 2d at 1001 (citations omitted). Here, RehabCare has not only pleaded facts indicating the required unity of interest, but some of the very factors to which courts look in deciding whether to pierce the corporate veil:

> To determine whether one corporation maintains the requisite degree of control over another to justify an alter ego finding, a court may consider several factors, including the failure to maintain adequate corporate records or to comply with corporate formalities, the commingling of funds or assets, undercapitalization, and whether one entity treats the assets of the other as its own.

*Chi. Reg'l Council of Carpenters* v. *Joseph J. Sciamanna, Inc.*, No. 08 C 4636, 2009 WL 1543892, at *2 (N.D. Ill. June 3, 2009). At the pleading stage, this is good enough; no more is

---

[7] SAK's motion treats RehabCare's allegations meant to establish the alter ego doctrine as if RehabCare has alleged "conspiracy." In any case, since the facts are addressed in the motion to dismiss, the court finds that the more specific argument against the alter ego doctrine, which appears only in SAK's reply brief, is not waived.

needed "to give the opposing party notice of what the case is all about and to show how, in the plaintiff's mind at least, the dots should be connected." *Swanson* v. *Citibank, N.A.*, --- F.3d ----, 2010 WL 2977297, at *3 (7th Cir. July 30, 2010). Though RehabCare has a tall task if it is to pierce the corporate veil at trial, *see Rehabcare*, 2007 WL 3334500, at *2 ("Parties seeking to pierce the corporate veil face a daunting hurdle."), the facts alleged are sufficient to survive a motion to dismiss for failure to state a claim. SAK's motion with respect to Count IV will be denied.

## IV.   Tortious Interference with Contracts (Count V)

A claim for tortious (or intentional) interference with a contract requires:

(1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contractual relation; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by the defendant's wrongful conduct; and (5) damages.

*HPI*, 545 N.E.2d at 676 (quoting *Prudential Ins. Co.* v. *Van Matre*, 511 N.E.2d 740, 744, 158 Ill. App. 3d 298, 110 Ill. Dec. 563 (1987) (internal quotation marks omitted)); *see also Complete Conference Coordinators, Inc.* v. *Kumon N. Am., Inc.*, 915 N.E.2d 88, 93, 394 Ill. App. 3d 105, 333 Ill. Dec. 567 (2009).

SAK's only argument for the dismissal of Count V is that RehabCare has failed to plead the third element—an intentional and unjustified inducement of a breach. SAK argues, citing *HPI*, 545 N.E.2d 672, that it was privileged to act as it did, meaning that it acted "to protect an interest which the law deems to be of equal or greater value than the plaintiff's contractual rights." *Id.* at 677. Conduct will be found privileged where a party—for instance, a corporate officer—owes to his company a duty to act in its best interest, and where that duty outweighs any obligations to the company's creditors. *See id*. When courts recognize a privilege, it is the

11

plaintiff's burden to *plead* that the defendant's conduct is unjustified. *Williams* v. *Shell Oil Co.*, 18 F.3d 396, 402–403 (7th Cir. 1994) (citing *HPI*, 545 N.E.2d at 677). Conduct is unjustified where it is "totally unrelated or even antagonistic to the interest which gave rise to defendant's privilege." *Id*. (quoting *HPI*, 545 N.E. at 678) (internal quotation marks omitted). SAK alleges that RehabCare has done nothing more than assert the unjustified nature of SAK's conduct and has thus failed to establish a necessary element of a claim for tortious interference with contract.

The question of privilege can be left for another day, because *even if* SAK was a privileged actor, RehabCare has sufficiently pleaded the lack of justification for SAK's actions. The *HPI* court noted that there would be no privilege where

> a hospital management company, whose privilege is based upon the management company's role in exercising business judgment on behalf of the company's hospital, would not be justified in inducing a breach of contract solely for the management company's gain, or solely for the purpose of harming the plaintiff, since such conduct would not have been done to further the hospital's interests.

*HPI*, 545 N.E.2d at 678; *see also RehabCare*, 2007 WL 3334500, at *5. SAK notes this in its reply, but this is actually fatal to its argument, since RehabCare alleges that SAK used its authority to cause the Facility Defendants to breach their contracts and "divert funds owed RehabCare *solely for SAK's gain*, or to harm RehabCare." Am. Compl. ¶ 22 (emphasis added). Other parts of RehabCare's claim elaborate on this further, explaining that SAK has withheld funds paid by Medicare that are owed to RehabCare. *Id.* ¶ 21. Thus, RehabCare has gone past conclusional allegations (e.g., "the defendant's actions were unjust"), and stated facts that support this element of the claim.

In response, SAK argues that any money paid to it was a payment of its own fees. This is a question of fact to be decided at a later stage, *see Lovellette* v. *S. Ry. Co.*, 898 F.2d 1286, 1291 (7th Cir. 1990) (finding that a 12(b)(6) motion to dismiss could not be granted because it

12

presented issues of fact), and SAK will have an opportunity at a later stage to do so, and argue that this justifies its actions. For present purposes, RehabCare's pleadings are sufficient to satisfy the only challenged element of this tort, and SAK's motion to dismiss Count V will be denied.

## **CONCLUSION AND ORDER**

For the foregoing reasons, SAK's motion [#39] is denied. SAK has until September 1, 2010 to answer the complaint.

Dated: August 18, 2010  Enter: _____

JOAN HUMPHREY LEFKOW
United States District Judge